## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| ASHLEY R. SAMPSON, | MEMORANDUM DECISION AND ORDER |
| Plaintiff, | |
| v. | Case No. 2:24-cv-00501-DBB-JCB |
| SALT LAKE CITY CORPORATION, | District Judge David Barlow |
| Defendant. | Magistrate Judge Jared C. Bennett |

### INTRODUCTION[1]

Before the court is pro se Plaintiff Ashley Sampson's ("Ms. Sampson") motion to quash subpoenas directed to five of her healthcare providers, none of whom are parties to this action.[2] For the reasons stated below, Ms. Sampson lacks standing to assert several of her objections, and her other objection fails on its merits. Accordingly, the court DENIES Ms. Sampson's motion.

### BACKGROUND[3]

Salt Lake City Corporation ("City") hired Ms. Sampson in March 2019 as an Office Technician II.[4] In March 2021, Ms. Sampson started to experience migraines and other health

---

[1] This case is referred to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(B). ECF No. 5.

[2] ECF No. 31.

[3] The court recites these facts as they are found in Plaintiff's amended complaint, noting where relevant Defendant Salt Lake City Corporation's differing account.

[4] ECF No. 10 at ¶ 7. The City states that Ms. Sampson was hired for this role in August 2019. ECF No. 20 at ¶ 7.

issues and began to request and obtain leave from work[5] under the Family and Medical Leave Act ("FMLA").[6] Over the ensuing months, Ms. Sampson's medical conditions continued, as did her periodic use of FMLA leave.[7] Ms. Sampson states that she is disabled and "suffers from unpredictable migraines, fibromyalgia, anxiety, depression, and gastrointestinal issues and has established a record of such impairments."[8] In November 2023, the City fired Ms. Sampson for her unavailability.[9] Ms. Sampson commenced this lawsuit alleging violations of the FMLA and the Americans with Disabilities Act ("ADA"),[10] including for the City's alleged failure to provide reasonable accommodations, disability discrimination, and retaliation.[11] Ms. Sampson claims damages approaching $3 million[12] for injuries including lost wages and emotional distress.[13]

Ms. Sampson has disclosed the names of 62 people who may have information to support her claims.[14] The five healthcare providers at issue here are included in that list.[15] The City seeks from these providers documents from January 1, 2020, to the present that pertain to Ms.

---

[5] ECF No. 10 at ¶¶ 9, 11.

[6] 28 U.S.C. §§ 2601 *et seq.*

[7] *See, e.g.*, ECF No. 10 at ¶¶ 28, 54, 70.

[8] ECF No. 10 at ¶ 79.

[9] *Id.* at ¶ 75. *See also* ECF No. 20 at ¶ 75.

[10] 42 U.S.C. §§ 12101 *et seq.*

[11] ECF No. 10 at 12-16.

[12] ECF No. 32-10.

[13] ECF No. 10 at ¶ 105.

[14] ECF No. 32-9 at 2-34.

[15] The subpoenas are filed at ECF Nos. 32-3, 32-4, 32-5, 32-6, and 32-7.

Sampson's health conditions; the providers' opinions related to Ms. Sampson's work restrictions and accommodations; bills and dates of service; and Ms. Sampson's statements regarding the cause of her health conditions, her ability to work, and work incidents.[16] A cover letter attached to the subpoenas asks the providers to search their records for Ms. Sampson's name and to supply to the City all responsive materials within the scope of the subpoena, including, among other items, intake forms, chart notes, office notes, evaluations, and diagnostic studies.[17]

Ms. Sampson challenges these subpoenas as overbroad and disproportionate, arguing that the timeframe is too long; as duplicative because they seek already-disclosed information; as unduly burdensome to the third-party healthcare providers; and as improper for seeking

---

[16] *See, e.g.*, ECF No. 32-3 at 4. The subpoenas include apparently identical lists of document requests labeled in each as "Exhibit A." An example is reproduced here in full:

1. Documents relating to Ms. Sampson created beginning January 1, 2020, through the present concerning the conditions of migraines, headaches, fibromyalgia, pain, anxiety, depression, and/or gastrointestinal issues.
2. Diagnoses and treatment plans relating to any condition described in Paragraph 1.
3. Documents showing opinions relating to work restrictions, accommodations, ability to work, remote-work restrictions, return to work, leave, FMLA, short-term disability, causation of health conditions, aggravation of health conditions, and/or damages allegedly caused by any act of the Salt Lake City Corporation (including but not limited to lost wages, lost benefits, and emotional distress).
4. Bills, documents showing dates of service, and/or documents showing actual amounts paid for services.
5. Work-status letters.
6. Forms relating to any disability, FMLA, and/or short-term disability benefits
7. Documents showing all statements made by Ms. Sampson about work stress, work incidents, ability to work, work restrictions, causation of health conditions described in Paragraph 1, and/or aggravation of any health condition described in Paragraph 1.
8. All communications with or about Ms. Sampson relating to her work status, work restrictions, work accommodations, leave, and/or any of the conditions described in Paragraph 1.

[17] ECF No. 32-2 at 1.

privileged and protected healthcare information.[18] Ms. Sampson seeks to quash these subpoenas or, in the alternative, for the court to perform an in-camera review of the produced documents; to designate the produced materials as "Attorney's Eyes Only;" and to require the City to pay all costs and expenses related to responding to the subpoenas.[19]

Below, the court first evaluates Ms. Sampson's challenges by laying out the applicable legal standards and then explains its reasoning in denying Ms. Sampson's objections.

### LEGAL STANDARDS

Fed. R. Civ. P. 26(b)(1) defines the scope of discovery as follows: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Subject to these boundaries, Fed. R. Civ. P. 45 sets out the standards for quashing subpoenas directed at nonparties. A court is required to quash a subpoena upon timely motion to do so where the subpoena "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."[20] The court *may* quash or modify a subpoena, upon motion to do so, if the subpoena requires disclosing trade secrets, confidential research, or an unretained expert's opinion in specific circumstances that do not apply here.[21]

---

[18] ECF No. 31 at 2-11.

[19] *Id*. at 1-2.

[20] Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv).

[21] Fed. R. Civ. P. 45(d)(3)(B)(i)-(ii).

A person must have standing to challenge a subpoena. "Generally, a party does not have standing to object to a subpoena issued to a third party, unless the party challenging the subpoena has a personal right or privilege with respect to the subject matter sought by the subpoena."[22] Such a personal right or privilege may arise when a subpoena targets a person's own financial records[23] or, as here, their medical information.[24] "However, 'even where a party has standing to quash a subpoena based on privilege or a personal right, he or she lacks standing to object on the basis of undue burden' and on the grounds of 'overbreadth and relevance.'"[25]

**ANALYSIS**

The court first assesses whether Ms. Sampson has standing to challenge the subpoenas. After concluding that she does, the court evaluates whether Ms. Sampson has met her burden under Fed. R. Civ. P. 45 to quash the subpoenas, and then considers whether to trim the subpoenas pursuant to Fed. R. Civ. P. 26.

---

[22] *Route App, Inc. v. Heuberger*, No. 2:22-CV-00291-TS-JCB, 2024 WL 309748, at *2 (D. Utah Jan. 26, 2024)

[23] *Ennis v. Alder Prot. Holdings, LLC*, No. 2:19-CV-512 CW, 2022 WL 4290099, at *2 (D. Utah Sept. 16, 2022) ("The court finds Defendants do have standing because Defendants have a privacy interest in their personal financial affairs that gives them standing.")

[24] *Shutrump v. Safeco Ins. Co. of Am.*, No. 17-CV-0022-CVE-TLW, 2017 WL 3579211, at *2 (N.D. Okla. Aug. 18, 2017) ("Plaintiff clearly has a privacy interest in a file that contains his medical records, and because plaintiff has a legitimate privacy interest in the contents of the file, he has standing to challenge the subpoena.")

[25] *Heuberger*, 2024 WL 309748, at *2 (citation modified) (quoting *Hutchinson v. Kamauu*, No. 2:20-CV-00796-RJS-DAO, 2022 WL 180641, at *2, *6-7 (D. Utah Jan. 20, 2022)). *See also Hueberger* at *2 n.22 (collecting cases for the proposition that "[o]bjections unrelated to a claim of privilege or privacy are not proper bases upon which a party may quash a third-party subpoena.").

## I.    Ms. Sampson Has Standing to Challenge the Subpoenas.

Ms. Sampson has standing to challenge the subpoenas because she has a personal right or privilege in the information sought by the subpoenas. The subpoenas are directed to therapists and doctors who have treated Ms. Sampson's medical conditions and seek information including diagnoses, treatment plans, and Ms. Sampson's own statements regarding work stress and her own health. Ms. Sampson has a "legitimate privacy interest" in that information and, thus, has standing to challenge subpoenas that seek it.[26]

However, Ms. Sampson lacks standing to challenge these subpoenas on any grounds other than those afforded by her personal right or privilege in the subject matter sought.[27] The court therefore denies Ms. Sampson's objections alleging that the subpoenas impose an undue burden on the third-party healthcare providers, seek duplicative information, and are overbroad or disproportionate. What remains is Ms. Sampson's contention that the subpoenas "seek disclosure of privileged and protected healthcare information."[28]

## II.    Ms. Sampson Has Not Met Her Burden to Quash the Subpoenas Under Fed. R. Civ. P. 45.

Fed. R. Civ. P. 45(d)(3)(A)(iii) mandates that courts quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." However, "[t]he burden is on the moving party to establish grounds for quashing a subpoena."[29]

---

[26] *Shutrump*, 2017 WL 3579211, at *2.

[27] *Hutchinson*, 2022 WL 180641, at *2 ("[E]ven if the court assumes [the party challenging a subpoena to a nonparty] has a personal right or privilege with regard to the records sought, he cannot object to the subpoenas on the basis of burden, overbreadth or relevance.").

[28] ECF No. 31 at 3.

[29] *Shutrump*, 2017 WL 3579211, at *1.

Ms. Sampson fails to meet this burden. The court construes Ms. Sampson's arguments as invoking the psychotherapist-patient privilege, which protects "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment."[30] Ms. Sampson argues that the "subpoenas seek disclosure of privileged and protected healthcare information, including communications for which no waiver has been granted."[31]

When weighing Ms. Sampson's objection to the production of this material, the court first notes that Ms. Sampson's health is central to her claims and the City's defenses. To prove her claim that the City failed to accommodate her under the ADA, Ms. Sampson first must prove that she was disabled.[32] The records sought by the City go directly to Ms. Sampson's contention that she is disabled, and thus are foundational to this claim.[33] Additionally, the health conditions that comprise Ms. Sampson's claimed disability include two mental-health conditions: anxiety and depression. This puts Ms. Sampson's mental health squarely at issue, as does Ms. Sampson's claim of emotional-distress damages.[34] Lastly, Ms. Sampson fails to show these records are confidential communications protected by the psychotherapist-patient privilege and that she has

---

[30] *United States v. Glass*, 133 F.3d 1356, 1356 (10th Cir. 1998) (citing *Jaffee v. Redmond*, 518 U.S. 1 (1996).

[31] ECF No. 31 at 3.

[32] *Dansie v. Union Pac. R.R. Co.*, 42 F.4th 1184, 1192 (10th Cir. 2022) ("To establish a prima facie failure-to-accommodate claim, Plaintiff had to show: (1) he was disabled; (2) he was otherwise qualified; (3) he requested a plausibly reasonable accommodation; and (4) Defendant refused to accommodate his disability.")

[33] ECF No. 10 at ¶ 79.

[34] *Id*. at ¶ 105.

not waived the privilege by putting her health at issue.[35] At most, Ms. Sampson offers conclusory statements, such as asserting that "no waiver has been granted,"[36] which are insufficient to successfully assert the privilege she seeks.

The court, however, is not unsympathetic to Ms. Sampson's privacy concerns about disclosing the sensitive information sought by these subpoenas. This is why the court's standard protective order includes provisions to safeguard such information. The subpoenaed entities are free to mark the material they produce as confidential or for attorney's eyes only, shielding it from broader disclosure. Accordingly, the court finds that Ms. Sampson has not met her burden to establish the grounds for quashing the subpoena, and the court denies her request to do so.

### III.    The Court Declines to Alter the Subpoenas Under Fed. R. Civ. P. 26 Because They Are Relevant and Proportional to the Claims and Defenses at Issue.

Although the court has denied Ms. Sampson's objections to the subpoenas, the court is obliged nevertheless to ensure that discovery conforms to the bounds of Fed. R. Civ. P. 26(b)(1).[37] After concluding its Rule 26 analysis, the court finds that the information sought is proportional to the claims and defenses at issue. The temporal scope is appropriate as it begins

---

[35] *See Shutrump*, 2017 WL 3579211, at *2 ("The party asserting privilege bears the burden of establishing its existence. As [the party asserting privilege] has failed to provide any support for its assertions of attorney-client and work product privileges, it has failed to carry its burden.") (citation modified). The court is mindful of Ms. Sampson's pro se status and, as such, construes her papers liberally.  The bulk of the court's conclusion, therefore, rests upon Ms. Sampson's waiver of the privilege and not her failure to argue for its application.

[36] ECF No. 31 at 3.

[37] *Heuberger*, 2024 WL 309748, at *3 ("[E]ven in cases where a moving party lacks standing to challenge a third-party subpoena, the court may exercise its inherent authority to limit irrelevant or non-proportional discovery requests under Rule 26(b)(2)(C).") (citing Fed. R. Civ. P. 26(b)(2)(C)(iii) (explaining that the court "must limit the frequency or extent of discovery" if the court determines that the proposed discovery is outside the scope permitted by Rule 26(b)(1)).

one year after Ms. Sampson was hired,[38] which is one year before she claims her symptoms began in earnest. This period is limited and does not reach inappropriately into the past. Additionally, seeking contemporary health information is relevant to Ms. Sampson's claims and to damages. Finally, as stated above, the information sought aligns with the medical conditions Ms. Sampson forwards as the basis of her ADA and damages claims.[39] For these reasons, the court leaves intact the requests for information contained in the subpoenas.

**ORDER**

For the reasons stated above, the court DENIES Ms. Sampson's motion to quash

IT IS SO ORDERED.

DATED this 12th day of May 2026.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[38] Or a few months after Ms. Sampson's hiring, according to the City's contention that Ms. Sampson was hired for the role in question in October 2019 and not, as Ms. Sampson claims, in March 2019. *See* n. 4, *supra*.

[39] ECF No. 10 at ¶ 79.